IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 12-36187 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | |
| | § | |
| Debtor | § | Chapter 7 |
| | § | |
| OHA INVESTMENT CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | ADVERSARY NO. 12-03443 |
| | § | |
| ATP OIL & GAS CORPORATION, | § | |
| And BENNU OIL & GAS, LLC | § | |
| | § | |
| Defendants. | § | |

**OHA INVESTMENT CORPORATION'S AMENDED MOTION TO DISMISS
THE COMPLAINTS IN INTERVENTION FILED BY THE
<u>STATUTORY LIEN CLAIMANTS</u>**

[Relates to Docket Numbers 62-67, 131]

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEYS.

COMES NOW OHA Investment Corporation f/k/a NGP Capital Resources Company ("OHA") and files this amended motion to dismiss (the "Motion") the complaints in intervention [Dkt. Nos. 62-67, 131] (collectively, the "Intervenor Complaints") filed in this proceeding by certain alleged lien claimants (the "Intervenors" or "Statutory Lien Claimants"), and would respectfully show the Court as follows:

## I.  RELIEF REQUESTED AND SUMMARY OF MOTION

1. OHA requests that the Court dismiss the Intervenor Complaints for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Bankruptcy Procedure 7012.  The Intervenors cannot re-write the Louisiana Oil Well Lien Act.  The Act details specific types of oil and gas interests and property to which privileges may attach. A privilege cannot attach to hydrocarbons owned by or amounts due to *a person who is not a lessee of the operating interest*.  OHA is not and never has been a lessee of the operating interest. The plain language of the statute provides that a privilege may attach to the working interest of the lessee and to hydrocarbons *produced* from that interest, but it does not provide for attachment to the entirety of the lessee's interest, including the lessee's net revenue interest or hydrocarbons to be produced.  As a result, the statute clearly contemplates the fact that a lessee may convey net revenue interests in hydrocarbons to be produced, without being affected by existing privileges. The distinction between a lessee's operating interest and net revenue interest is well documented under Louisiana law, and the statutory language is clear that hydrocarbons attributable to royalty owners cannot be affected by privileges.

2. To the extent the Court does not dismiss the Intervenors' claims on the basis that their privileges cannot attach to non-lessee interests, the claims must be dismissed because the

Term Overriding Royalty was purchased in a bona fide transaction and is protected under section 9:4869 of the statute.

3. Because it is clear that the Intervenors cannot prove any set of facts in support of their claims, their complaints must be dismissed.

## II.  BACKGROUND

4. On August 17, 2012 (the "Petition Date"), ATP filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code.  On that same date, the Debtor filed a motion seeking authorization to pay post-petition funds attributable to overriding royalty interests [Bankr. Dkt. No. 15] (the "Payment Motion").

5. Prior to the Petition Date, pursuant to certain PSAs and a duly recorded Conveyance dated June 1, 2011 (and two Supplements and Amendments to the Conveyance, herein in the aggregate the "Conveyance"), OHA purchased certain term overriding royalties (the "Term Overriding Royalties") in certain outer continental shelf oil, gas, and mineral leases to submerged lands – known generally as the "Gomez and Telemark Properties" – for $65 million. Under the Conveyance, OHA is entitled to receive its proportionate share of the proceeds of any and all hydrocarbons produced, saved and sold from the Properties for each production month until such time as the sum of the royalty proceeds actually received by OHA under the Conveyance equals the "Total Sum" as defined in section 3.3 of the Conveyance.

6. On August 23, 2012, the Court entered an order authorizing the payment by the Debtor of funds attributable to certain overriding royalty interests and net profits interests [Bankr. Dkt. No. 191] (the "Payment Order").

7. On October 17, 2012, OHA filed its Complaint [Dkt. No. 1] (the "Complaint") in this proceeding against ATP.  On December 14, 2012, OHA filed its First Amended Complaint

[Dkt. No. 69] (the "Amended Complaint"). As more fully described in the Amended Complaint, OHA sought a declaratory judgment that the Term Overriding Royalties are property of OHA and/or are not property of the ATP bankruptcy estate. OHA further sought a declaration that the Conveyance and the instruments giving rise to the Conveyance are not executory contracts that may be rejected.

8. On October 24, 2012, this Court entered a Case Management Order [Dkt. No. 6], setting the deadline for the filing of motions to intervene and the Debtor's answer as October 31, 2012.

9. On or before October 31, several parties asserting a lien against certain of the Debtor's property filed motions to intervene,[1] and the motions were granted as set forth in this Court's November 27, 2012 Order [Dkt. No. 50] (the "Intervention Order").

10. On November 29, 2012, the Court entered an Amended Case Management Order, bifurcating the issues before the Court such that the issues of "(i) whether the conveyance(s) and transaction(s) between Plaintiffs and Defendant constituted outright transfers of ownership of the subject interest to Plaintiffs such that the subject interests are not property of the Debtor's estate; and (ii) whether the conveyances of the subject interests are executory contracts or leases which the Debtor may reject under 11 U.S.C. § 365" (defined in the Order as the "Financing Issues") will be tried in the first phase. And, any remaining issues (the "Phase II Issues") will be adjudicated under a separate case management order to be issued after a determination of the Financing Issues. The Order further required that, until a determination of the Financing Issues, "further pleadings in this proceeding shall relate to the determination of the Financing Issues." [See Dkt. No. 57 at para. 1]. Significantly, the Court directed that Intervenors "must file Rule

---

[1] See Dkt. Nos. 7, 10, 14-15, 17, 20-21 & 29 (asserting liens on the Properties based on goods and/or services delivered).

24(c) pleadings setting forth their claims and defenses by Dec. 13, 2012, *relating to the Financing Issues*." [*See id*. at para. 4 (emphasis added)].

11. On December 13, 2012, the Intervenor Complaints were filed as follows:

- Dkt. No. 62 - Frank's Casing Crew and Rental Tools, Inc.

- Dkt. No. 63 - Warrior Energy Services Corporation, Fastorq, L.L.C., Stabil Drill Specialties, L.L.C., Workstrings International, L.L.C., and Superior Energy Services, L.L.C., d/b/a Superior Completion Services

- Dkt. No. 64 - Harvey Gulf International Marine, LLC, Hornbeck Offshore Services, LLC, Expeditors and Production Services, Inc., and EPS Cargo Handlers Company, Inc.

  o Dkt. No. 131 – First Amended Complaint by Harvey Gulf International Marine, LLC, Hornbeck Offshore Services, LLC, Expeditors and Production Services, Inc., and EPS Cargo Handlers Company, Inc.

- Dkt. No. 65 - Schlumberger Technology Corporation, M-I L.L.C. d/b/a M-I SWACO, Smith International, Inc., Wireline Control Services, LLC, Nabors Offshore Corporation, Canrig Drilling Technology, Ltd., and Supreme Service & Specialty Co. Inc. (the "Schlumberger Complaint")

- Dkt. No. 66 - Champion Technologies, Inc. and Offshore Energy Services, Inc.

- Dkt. No. 67 - Gulf Offshore Logistics, L.L.C., Martin Holdings, L.L.C., C-Port/Stone, L.L.C., and Offshore Service Vessels, L.L.C.

12. The Schlumberger Complaint is the only Intervenor Complaint that nominally sought relief with respect to the Financing Issues (*see* Dkt. No. 65 at para. 21). On December 19, 2012, *OHA filed its Motion to Strike, Dismiss, or Alternatively, Abate Complaints in Intervention filed by Certain Alleged Lien Claimants in Violation of Amended Case Management Order* [Dkt. No. 70] (the "Motion to Dismiss"). The Court did not set a hearing on the Motion to Dismiss. Accordingly, pursuant to the Amended Case Management Order, Phase II of the litigation was - in effect - abated pending a resolution of Phase I.

5

13. The Intervenor Complaints assert claims against OHA, generally seeking declaratory relief: (1) that they hold statutory privileges under the Louisiana Oil Well Lien Act ("LOWLA") against ATP's operating or leasehold interest in the Gomez and/or Telemark Properties; (2) that the Term Overriding Royalties were transferred to OHA subject to their privileges; and (3) that payments made to OHA must be disgorged until their privileges are satisfied. All of the Intervenor Complaints are premised on the theory that privileges arising under LOWLA attach to overriding royalty interests.

14. On or about October 17, 2013, Bennu purchased certain assets from ATP including all claims against OHA for recharacterization of the Term ORRI and under 11 U.S.C. § 549.[2] On June 26, 2014, ATP's Bankruptcy Case was converted to a case under Chapter 7,[3] and Rodney D. Tow was appointed as Chapter 7 Trustee (in such capacity, the "Trustee").[4]

15. Effective April 22, 2015, Bennu and OHA entered into a Settlement and Release Agreement (the "Settlement Agreement") to fully resolve the Financing Issues. And, on April 30, 2015, Bennu and OHA filed their Expedited Joint Motion to Enter Agreed Judgment [OHA Adv. Dkt. No. 238] (the "Motion for Agreed Judgment"). Based on an objection filed by the Trustee, the Motion for Agreed Judgment was abated for future consideration.

16. On October 16, 2015, the Trustee, OHA and Bennu jointly filed a *Stipulation of Settlement and Release* [OHA Adv. Dkt. No. 271] (the "Stipulation") to resolve the Financing Issues, as well as, other claims. In connection therewith, the Trustee filed a *Motion to*

---

[2] Bankr. Dkt. No. 2706 (sale order); Adv. Dkt. No. 236 (order on ownership motion); Adv. Dkt. No. 296, Memorandum Opinion, Case No. 12-03425.
[3] Bankr. Dkt. No. 3163.
[4] Bankr. Dkt. No. 3165.

*Compromise Controversy Under Bankruptcy Rule 9019* [Bankr. Dkt. No. 3628] (the "Motion to Compromise"), seeking an order approving the Stipulation.[5]

17.     On December 14, 2015, the Court entered its order approving the Stipulation. And, a hearing on the Motion for Agreed Judgment has been rescheduled for February 4, 2016, at 10:00 a.m.  A grant of the Motion for Agreed Judgment will fully and finally resolve the Financing Issues.  Accordingly, OHA submits this Amended Motion to Dismiss the Intervenor Complaints.

### III.  ARGUMENT

**(i)     Standard of Review**

18.     A complaint should be dismissed if it "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In considering such a motion, although the Court accepts all of the factual allegations in the complaint as true, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 106 S. Ct. 2932 (1986).  Dismissal is appropriate where "it is clear the plaintiff can prove no set of facts in support of the claims in the complaint."  *Powell v. U.S.*, 945 F.2d 374, 375 (11th Cir. 1991).  Therefore, a court should dismiss a complaint "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall County Bd. Of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

19.     While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusion, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1964-65,

---

[5] Attached to the Motion to Compromise as Exhibit 1 is a copy of the Stipulation.

507055 000037 16399277.4

167 L. Ed. 2d 929 (2007), *quoting Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986). Further, the plaintiff's factual allegations, when assumed to be true, "must be enough to raise a right to relief above the speculative level. . . ." *Id*. at 555, 127 S. Ct. at 1965.

> **A.** **Under LOWLA, Statutory Privileges Do Not Attach to Overriding Royalty Interests, Production Owned by Overriding Royalty Holders, or Obligations Owed to Overriding Royalty Holders.**

20. "[W]here the statute's language is plain "the sole function of the court is to enforce it according to its terms." *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989). Section 4863 of LOWLA details specific types of oil and gas interests and property to which privileges may attach. A privilege cannot attach to hydrocarbons owned by or amounts due to *a person who is not a lessee of the operating interest*. La. R.S. § 9:4863(C)(1). Taking all factual allegations in the Intervenor Complaints as true, the Complaints must be dismissed because there is no right to relief under LOWLA against OHA as the holder of a term overriding royalty interest.

21. Under LOWLA, privileges attach to operating interests (cost-bearing interests) under which operations are conducted, the interests of the lessee, if any, in hydrocarbons produced from the operating interest, proceeds received by the lessee from the disposition of hydrocarbons subject to the privilege, and movables/equipment on the well site that are owned by the lessees. *See* La. R.S. § 9:4863(A). The express language of the statute implicates cost-bearing or "operating interests" and specifically excludes hydrocarbons attributable to royalty owners or other persons who are not lessees of the operating interest. *See* La. R.S. § 9:4863(A), (C). The statute specifically provides:

> § 4863. Property subject to the privilege:
>
> **A.** *Except as limited by Subsections B, C, and D of this Section*, **the privilege given by R.S. 9:4863 is established over:**

> (1) The operating interest under which the operations giving rise to the claimant's privilege are conducted. . .
> (2) Drilling or other rig located at the well site of the operating interest if the rig is owned by the operator or by a contractor from whom the activities giving rise to the privilege emanate.
> (3) The interest of the operator and participating lessee in hydrocarbons produced from the operating interest and the interest of a non-participating lessee in hydrocarbons produced from that part of his operating interest subject to the privilege.
> (4) The proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege.

La. R.S. § 9:4863(A) (emphasis added).

22. Subsection C states that:

> C. The privilege does **_not affect_**:
>
> (1) **_That part_** of **_hydrocarbons produced from an operating interest that is owned by a_** lessor, sublessor**_, overriding royalty owner, or other person who is not a lessee of the operating interest._**
> (2) The obligations or proceeds arising from the disposition of such hydrocarbons that are owned by or payable to such persons.

La. R.S. § 9:4863(C) (emphasis added).

23. Although ATP was a lessee and sold an overriding royalty to OHA, there is no allegation in any of the Intervenor Complaints that OHA has ever been a lessee or holder of an operating interest.

### (ii) Under LOWLA, Attachment Depends on Whether the Interest Owner is a Lessee - Not On the Timing of Particular Non-Cost-Bearing Conveyances

24. Under the Statute, the term "operating interest" is defined as "a mineral lease or sublease of a mineral lease, or an interest in a lease or sublease *that gives the lessee,* either singly or in association with others*, the right to conduct the operations giving rise to the claimant's privilege*." La. R.S. § 9:4861(5)(a) (emphasis added). The plain language dictates that a privilege may attach to interests that give the lessee the right to conduct the operations and the interest of the lessee in hydrocarbons "produced from the operating interest." *See id*. It

9

expressly excludes hydrocarbons "produced from the operating interest" attributable to royalty owners or others who are <u>not lessees of the operating interest</u>.  La. R.S. § 9:4863(C).

25.  It is significant that the statute describes hydrocarbons owned by cost-bearing and non-cost-bearing interest owners as being "produced from the operating interest" – while specifying that only the "operating interest" (and the lessee's interest in hydrocarbons <u>produced</u> from the operating interest) is subject to privileges.  La.R.S. 9:4863(A)(1), (C).  The statute's focus on the "operating interest" – and "the interest of the operator and participating lessee" in hydrocarbons produced from that interest – indicates that LOWLA is prospective as it relates to interest owners, because it is common knowledge that interests in hydrocarbons (<u>to be produced</u>) can be conveyed from the lessee's "net revenue interest" during operations and production, without reducing the lessee's operating interest.  As a result, the statute clearly contemplates that a net revenue interest (without a right to conduct operations) may be assigned without being affected by existing privileges.

26.  Because words and phrases must be "read with their context" and "construed according to the common and approved usage of language,"[6] it should be noted that in customary oil and gas terminology an "operating interest" is synonymous with a "working interest" in an oil and gas lease.  *See, e.g., Fordoche, Inc., v. Texaco, Inc*., No. 01-1135-A, 2005 U.S. Dist. LEXIS 47343 *9 (M.D. La. July 15, 2005) (noting "operating interest" is sometimes called a "working interest"); *Kimbell v. United States*, 371 F.3d 257, 267 (5th Cir. 2004) (explaining that "[a] working interest in an oil and gas lease is a cost-bearing operating interest in the property."); *Tufts v. SNG Trading*, No. 87-3015, 1991 U.S. Dist. LEXIS 5288 *2 (E.D. La. April 15, 1991) (explaining that a "working interest" is the "operating interest" under an oil and gas lease);

---

[6] La. R.S. Ann. 1:3.

507055 000037 16399277.4

*Online Resources, Inc. v. Stone Energy Corp.*, No. 99-2006, 1999 U.S. Dist. LEXIS 17057 *11 (E.D. La. October 29, 1999) (recognizing under an oil and gas lease "a working interest or operating interest is created").  The owner of the working interest/operating interest has the exclusive right to exploit the minerals in the land.  HOWARD R. WILLIAMS & CHARLES J. MEYERS, MANUAL OF OIL AND GAS TERMS 1207, (11th Ed. 2000).  And, the operating interest / working interest bears the production costs associated with operations. *Id*.  An overriding royalty is an interest in oil and gas produced at the surface, free of the expense of production.[7]  It is by nature an interest that does not share in the costs of development, operations, and production.[8]  Also, it is well known that an "operating interest" is distinct and severable from the "net revenue interest" in an oil and gas lease. *See J.B. Hanks Co., Inc. v. Shore Oil Co.*, No. 97-CV-0040, 2013 U.S. Dist. LEXIS 184130 *10-11 n. 22 (M.D. La. August 8, 2013). Specifically:

> The working interest [operating interest], or 'WI,' is the basis on which costs and expenses are incurred and borne (the owner of a 100% working interest pays *all* -- 100% -- of the costs and expenses), and the net revenue interest, or "NRI," is the amount of revenue which accrues and relates to the working interest (and out of which such costs and expenses are to be paid).  In the simplest of cases, *the NRI is typically 100%* **minus the lessor's royalty as well as any other burdens on the revenue, if any**.

*J.B. Hanks Co., Inc.*, No. 97-CV-0040, 2013 U.S. Dist. LEXIS 184130 at *10-11 n. 22 (emphasis added).

27. Generally, a working interest owner is free to reduce its net revenue interest (by conveying cost-free interests such as royalties) on a per-well or per-lease basis, while maintaining responsibility for all of the costs and expenses associated with the lease. *See e.g., Freeman v. Block "T" Operating, LLC*, 118 So.3d 1279, 1281 (La. App. 2013) (involving

---

[7] 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418.1 at 352.
[8] *Id; see also*, 2 P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 424 at 366.10-366.11.

conveyances of royalties and subsequent conveyances of working interests with lesser net revenue interests).

28.  In fact, it is quite common for a working interest owner to assign overriding royalty interests, production payments and other interests in order to aide in the development of the underlying lease (i.e. to pay drilling costs).  2  P. MARTIN & B. KRAMER, WILLIAMS & MEYERS OIL AND GAS LAW § 418.1 at 351 (noting overriding royalties may be granted as consideration for services or as consideration for the financing of drilling operations).  And in such instances, the working interest owner may maintain 100% of the working interest (which gives rise to the right to conduct operations) notwithstanding the assignment of overriding royalty interests (or other non-cost-bearing interests), which do <u>not reduce the operating interest/working interest</u>.  *See J.B. Hanks Co., Inc.*, No. 97-CV-0040, 2013 U.S. Dist. LEXIS 184130 at *10-11 n. 22.  The operating interest remains exactly the same before and after the conveyance of a non-cost-bearing interest.  However, the holder's net revenue interest would be reduced by the conveyance, and the assigning operator would receive - through the sale - the value on account of the specific interest sold.

29.  It is clear based on LOWLA's language, that the type of interest held is the critical inquiry to determine whether a privilege attaches.  And, the fact that the statute focuses on "operating interests" – rather than the entirety of the mineral interests (and net revenue interest) owned by the lessee as of the date of the privilege's inception – evidences an intent to permit the holder of an operating interest to convey cost-free interests (i.e. royalties that may reduce the net revenue interest) in the face of continuing lease operations.  Notably, per the statute the operating interest of the lessee would remain subject to the privileges.  And, because the operating interest is the interest that enables the lessee to conduct operations, the lessee

would lose the right to operate and any revenue it is entitled to receive – to the extent the operating interest is foreclosed upon. Moreover, any other holders of cost-free interests (i.e. royalty owners) would stand to lose future net revenue if operations are discontinued.

> **(iii)** **If the Statute Were Intended to Attach to Cost-Free Interests Conveyed Post-Inception, Interests Held by Non-Lessees would Not Be Expressly Carved Out Under the Statute.**

30. If the intent of the Statute was for privileges to attach to cost-free interests conveyed after inception, then there would be no need to expressly carve out hydrocarbons produced "from the operating interest" attributable to royalty owners or others who are not lessees of the "operating interest." *See* La. R.S. § 9:4863(C). Moreover, there would be no need to expressly limit attachment of the privilege to the "operating interest." The statute would simply provide for the attachment to all of the lessee's rights granted under the lease as of the time the privilege is established. There would be no need to carve out non-lessee interests because such interests would not be subject a privilege unless the lessee assigned a cost-free interest after the inception of the privilege.

31. Because non-lessee interests are expressly carved out and only the "operating interest" is subject to the privilege, the statute is clear that privileges cannot attach to subsequently conveyed royalties. Lien statutes are to be strictly construed against the party claiming the lien, especially as it relates to determining whether a claimant is entitled to a lien. *See Phillips Petroleum Co. v. Best Oilfield Services, Inc.*, 48 F.3d 913, 916 (5th Cir. 1995) (noting Louisiana courts construe privileges strictly when in doubt); *Amoco Production Co. v. Horwell Energy Inc.*, 969 F.2d 146, 148 (5th Cir. 1992) (stating privileges are construed strictly; when in doubt, no privilege is found); *Baker Chemicals, Inc., v. Arkla Exploration Co.*, 545 So.

2d. 709, 711 (La. App. 1989); *Louisiana Materials Co., Inc., v. Atlantic Richfield Co.*, 493 So.2d 1141, 1145 (La. 1986).

32. Even if the Court concludes that privileges attach to a lessee's net revenue interest and to hydrocarbons not yet produced (which OHA denies), the statute expressly carves out overriding royalty interests and non-lessee interests in hydrocarbons produced. *See* La. R.S. § 9:4863(C). The statute simply does not allow privileges to attach to non-lessee interests. Rather, the statute provides that privileges, if any, would attach to the proceeds received by or amounts owed to the lessee on account of the sale of the non-cost-bearing interest. *See* La. R.S. § 9:4863(A)(4). It states that the property subject to a privilege includes "proceeds received by, and the obligations owed to, a lessee from the disposition of hydrocarbons subject to the privilege." La. R.S. § 9:4863(A)(4). The statute defines hydrocarbons to include hydrocarbons not yet produced, to wit: "oil and gas occurring naturally in the earth and any other valuable liquid or gaseous substance found in association with them." La. R.S. § 9:4861(2). It is undisputed that ATP sold the Term Overriding Royalty and the related hydrocarbons to OHA for $65 million. Accordingly, the Intervenors' privileges (if any) would have attached to the amounts paid by OHA for the purchase of the hydrocarbons, not the Term Overriding Royalty. It would be absurd for LOWLA to impose liability on OHA or its property for operating costs attributable to ATP's operating interest, when OHA never acquired an operating interest and instead paid substantial value to ATP in a bona fide transaction for a non-cost-bearing royalty interest.

33. The Intervenors would have the Court re-write the statute to state that "[t]he privilege does not affect (1) That part of hydrocarbons produced from an operating interest that is owned by a lessor, sub lessor, overriding royalty owner, or other person who is not a lessee of

14

the operating interest [*unless the interest of the non-lessee was part of the net revenue interest that accrued to the operating interest at the time the privilege was established*]." *Cf.*, La. R.S. § 9:4863(C)(1). Obviously, this is not what the statute says, and it should not be re-written for the benefit of the Intervenors. *United States v. Temple*, 105 U.S. 97 (1882) ("When the language is plain, a court has no right to insert words and phrases, so as to incorporate in the statute a new and distinct provision."). Whether a statutory lien attaches to particular property is entirely dependent upon the applicable statutory language, which varies materially under the lien statutes of different states. Under Texas law, for example, statutory mineral liens do not attach, in any respect, to hydrocarbons as they are produced. *See* Tex. Prop. Code § 56.003.

### (iv) OHA's Interpretation of LOWLA is Supported by Important Policies Underlying Oil and Gas Law.

34.    OHA's interpretation of the statute promotes development of oil and gas leases while also protecting the rights of mineral lien claimants and innocent third parties. It promotes flexibility on the part of lessees to raise capital through sales of interests and encourages continued lease development, which ultimately stands to benefit statutory lien claimants. More specifically, it provides lessees a mechanism to pay outstanding trade debt through sales of future production. If any interest sold by a working interest owner to a non-lessee during lease operations is subject to statutory privileges, sales of such interests will be substantially chilled because there is no adequate due diligence mechanism to protect against such claims. As a result, lease development activities will be dramatically curtailed. Importantly, at any given time during lease operations, trade vendors are performing services on behalf of the operator and liens have incepted under the terms of the statute (even if the trade debt giving rise to such liens is being paid current, within terms). Accordingly, once operations commence, an operator could

not lawfully sell interests in the lease, and innocent purchasers willing to pay fair market value for oil and gas interests would be subject to undeterminable (inchoate) lien claims.

35. By the same token, the Intervenors' interpretation of the statute would preclude them from benefitting from potential increases in a lessee's interest after the inception of a lien. That is to say, if there is a temporal limitation with respect to the ownership interests described in LOWLA – then hydrocarbons produced from interests acquired by the lessee, in the same lease but *after the inception date* – would not be subject to the lien. *See* La. R.S. § 9:4863(A)(1) (stating only the interest "under which the operations giving rise to the claimant's privilege are conducted" is subject to the privilege). If, for example, the lessee granted a conditional or defeasible interest under the lease to a third party, prior to the inception of any privileges, any reversion of that interest (and related increase in the lessee's net revenue interest) after the inception of the lien would not be subject to the lien. Contrary to the Intervenors' position, it has been determined that the statute "extends prospectively since production is normally the end of the drilling process." *Ogden Oil Co. v. Servco*, 611 F. Supp. 572, 576 (Dist. M.D. La. 1985). Accordingly, the terms of the statute apply prospectively as production occurs, and non-lessee interest owners cannot be subject to privileges.

36. Based on the plain language of the statute and the interpretive standards applicable in this case (*stricti juris*), a privilege cannot attach to the Term Overriding Royalties. *See Amoco Production Co. v. Horwell Energy Inc.*, 969 F.2d 146, 148 (5th Cir. 1992) (stating privileges are construed strictly; when in doubt, no privilege is found).

    **B.** **Alternatively, OHA is Entitled to the Statutory Safe Harbor for Hydrocarbon Purchasers**

37. To the extent the Court does not dismiss the Intervenors' claims under section 9:4863, the claims must be dismissed based on the protections to purchasers of hydrocarbons under section 9:4869. Section 9:4869 provides:

> A. The privilege established by R.S. 9:4863(A)(3) and (4) over hydrocarbons, the amount due for their price, and their proceeds is extinguished . . . in the following ways:
>
> (1)(a) The privilege is extinguished **as to hydrocarbons that are sold** or otherwise transferred in a bona fide onerous transaction *by the lessee* or other person who severed or owned them at severance *if the transferee pays for them before he is notified of the privilege by the claimant.*

La. R.S. § 9:4869 (emphasis added).

38. As discussed *supra*, the definition of hydrocarbons includes hydrocarbons yet to be produced – "oil and gas occurring naturally in the earth." La. R.S. § 9:4861(2). Accordingly, section 9:4869 applies to sales of hydrocarbons by a lessee as produced and to be produced. There is no dispute that the Term Overriding Royalty was sold to OHA (by ATP - the lessee) in a "bona fide onerous transaction." Likewise, there is no allegation in any complaint that OHA was served with notice of any privileges prior to the purchase of the Term Overriding Royalty. To the contrary, none of the privileges were filed or noticed at the time OHA purchased the Term Overriding Royalty. Therefore, even if the privileges attached to the hydrocarbons in the hands of ATP prior to the time of production (which the statute expressly bars), the privileges were extinguished when the hydrocarbons were sold to OHA. Therefore, the Intervenor Complaints must be dismissed.

## IV. CONCLUSION AND PRAYER

For the foregoing reasons, the Intervenor Complaints should be dismissed.

17

Dated:   February 3, 2016.

                                Respectfully submitted,

                                **THOMPSON & KNIGHT LLP**

                                By: /s/ *Tye Hancock*

                                    Tye C. Hancock
                                    Bar No. 24032271
                                    Mitchell E. Ayer
                                    Bar No. 01465500
                                    333 Clay Street, Suite 3300
                                    Houston, Texas 77002
                                    Telephone: (713) 654-8111
                                    Facsimile: (713) 654-1871

                                    David M. Bennett
                                    Bar No. 2139600
                                    Katharine Battaia Clark
                                    Bar No. 24046712
                                    1722 Routh Street, Suite 1500
                                    Dallas, Texas 75201
                                    Telephone: (214) 969-1700
                                    Facsimile: (214) 969-1751

                              **ATTORNEYS FOR OHA INVESTMENT CORPORATION**

## CERTIFICATE OF SERVICE

     I hereby certify that a true and correct copy of the foregoing was served on those parties entitled to notice via this Court's ECF system and upon the parties on the attached service list by regular US mail on this 3rd day of February, 2016.

                                    /s/*Tye C. Hancock*
                                    Tye C. Hancock

507055 000037 16399277.4

## SERVICE LIST

Bennu Oil & Gas, LLC
4600 Post Oak Place, Suite 100
Houston, TX 77027

**DEFENDANT**

Andrew J. Gallo
MORGAN, LEWIS & BOCKIUS LLP
One Federal St
Boston, MA 02110
andrew.gallo@morganlewis.com

Sean B. Davis
WINSTEAD PC
1100 JPMorgan Chase Tower
600 Travis Street
Houston, TX 77002
sbdavis@winstead.com

Phillip L Lamberson
WINSTEAD PC
500 Winstead Building
2728 N. Harwood Street
Dallas, TX 75201
plamberson@winstead.com

**ATTORNEYS FOR BENNU OIL & GAS, LLC**

Rodney D. Tow
TOW AND KOENIG PLLC
26219 Oak Ridge Drive
The Woodlands, TX 77380
rtow@towkoenig.com

**TRUSTEE**

Charles M. Rubio
DIAMOND MCCARTHY, LLP
909 Fannin Street, Suite 1500
Houston, TX 77010
crubio@diamondmccarthy.com

**COUNSEL FOR TRUSTEE IN MAIN BANKRUPTCY**

Chris Lindstrom
COOPER & SCULLY, P.C.
815 Walker Street, Suite 1040
Houston, Texas 77002
Chris.Lindstrom@cooperscully.com

Timothy Micah Dortch
COOPER & SCULLY, P.C.
900 Jackson Street, Suite 100
Dallas, TX 75202
Micah.Dortch@cooperscully.com

**ATTORNEY IN CHARGE FOR RODNEY TOW, TRUSTEE**

Robin B. Cheatham
ADAMS AND REESE LLP
One Shell Square
701 Poydras Street, Suite 4500
New Orleans, Louisiana 70139-4500
robin.cheatham@arlaw.com

**ATTORNEYS FOR HARVEY GULF INTERNATIONAL MARINE, LLC, HORNBECK OFFSHORE SERVICES, L.L.C., EXPEDITORS & PRODUCTION SERVICES, INC., EPS CARGO HANDLERS COMPANY, AND EPS LOGISTICS COMPANY**

Paul M Davis
ANDREWS KURTH LLP
600 Travis, Suite 4200
Houston, TX 77002
pauldavis@andrewskurth.com

John J. Sparacino
VORYS, SATER, SEYMOUR & PEASE LLP
700 Louisiana Street, Suite 4100
Houston, Texas 77002
jjsparacino@vorys.com

**ATTORNEYS FOR THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.**

19

Brian D. Wallace
Allen C. Miller
Evan Dicharry
PHELPS DUNBAR LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
brian.wallace@phelps.com
allen.miller@phelps.com
evan.dicharry@phelps.com

**ATTORNEYS FOR CREDITORS, GULF OFFSHORE LOGISTICS, L.L.C., MARTIN HOLDINGS, L.L.C., C-PORT/STONE L.L.C., OFFSHORE SERVICE VESSELS, L.L.C. AND BARRY GRAHAM OIL SERVICE, L.L.C.**

Phil F. Snow
Kenneth Green
Ross Spence
SNOW FOGEL SPENCE LLP
2929 Allen Parkway, Suite 4100
Houston, TX 77019
philsnow@snowfogel.com
kennethgreen@snowfogel.com
rossspence@snowfogel.com

**ATTORNEYS FOR SCHLUMBERGER TECHNOLOGY CORPORATION, M-I L.L.C. D/B/A M-I SWACO, SMITH INTERNATIONAL, INC., WIRELINE CONTROL SERVICES, LLC, NABORS OFFSHORE CORPORATION, CANRIG DRILLING TECHNOLOGY, LTD., AND SUPREME SERVICE & SPECIALTY CO. INC.**

Michael D. Rubenstein
LISKOW & LEWIS
1001 Fannin Street, Ste. 1800
Houston, Texas 77002
mdrubenstein@liskow.com

**ATTORNEYS FOR CHAMPION TECHNOLOGIES, INC. AND OFFSHORE ENERGY SERVICES INC.**

Stewart F. Peck
Christopher T. Caplinger
Benjamin W. Kadden
LUGENBUHL, WHEATON, PECK, RANKIN 601 Poydras Street, Suite 2775
New Orleans, LA 70130
speck@lawla.com
ccaplinger@lawla.com
bkadden@lawla.com

**ATTORNEYS FOR WARRIOR ENERGY SERVICES CORPORATION, FASTORQ, L.L.C., STABIL DRILL SPECIALTIES, L.L.C., WORKSTRINGS INTERNATIONAL, L.L.C., AND SUPERIOR ENERGY SERVICES, L.L.C.**

J. Christopher Kohn
Kathie Shahan
Victor W. Zhao
Commercial Litigation Branch
United States Department of Justice
P.O. Box 875
Ben Franklin Station
Washington D.C. 20044
victor.w.zhao@usdoj.gov

**COUNSEL FOR THE UNITED**