UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 12-36187 |
| ATP OIL & GAS CORPORATION | CHAPTER 11 |
| Debtor | |

---

| | |
|---|---|
| NGP CAPITAL RESOURCES COMPANY | ADVERSARY NO. 12-03443 |
| Plaintiff and Defendant-in-Intervention | |
| V. | |
| ATP OIL & GAS CORPORATION | |
| Defendant and Defendant-in-Intervention | |
| V. | |
| HARVEY GULF INTERNATIONAL MARINE, LLC, HORNBECK OFFSHORE SERVICES, LLC, EXPEDITORS AND PRODUCTION SERVICES, INC. AND EPS CARGO HANDLERS COMPANY, INC. | |
| Plaintiffs-in-Intervention | |

---

**SECOND AMENDED COMPLAINT IN INTERVENTION BY
HARVEY GULF INTERNATIONAL MARINE, LLC, AND
<u>HORNBECK OFFSHORE SERVICES, LLC.</u>**

Harvey Gulf International Marine, LLC ("**_Harvey Gulf_**"), and Hornbeck Offshore

Services, LLC ("**_Hornbeck_**" or, collectively, the "**_Intervenors_**"), file this Second

1

Amended Complaint in Intervention ("**Complaint**")[1] and respectfully show the Court as follows:

## PARTIES

1.      Plaintiff-in-Intervention, Harvey Gulf, is a Louisiana limited liability company with its principal place of business in Galliano, Louisiana.

2.      Plaintiff-in-Intervention, Hornbeck, is a Delaware limited liability company with its principal place of business in Covington, Louisiana.

3.      Defendant-in-Intervention, OHA Investment Corporation fka NGP Capital Resources Company ("**OHA**") has its principal place of business in Irving, Dallas County, Texas.   Plaintiff has entered its appearance and may be served through its counsel.

4.      Defendant-in-Intervention, Bennu Oil and Gas, LLC ("**Bennu**"), which was substituted for ATP Oil and Gas Corporation in this Adversary Proceeding on May 20, 2014, is a Delaware limited liability company and has entered its appearance and may be served through counsel.   Bennu is being substituted in place of ATP Oil & Gas Corp. ("**Debtor**" and/or "ATP") and Credit Suisse AG, Cayman Island Branch pursuant to Bennu's acquisition of the Subject Properties from ATP, on June 9, 2014.

5.      The following parties have intervened in this adversary proceeding and may be served through their respective counsel:

Schlumberger Technology Corporation; M-I L.L.C. d/b/a M-I SWACO;

Smith International, Inc.; Wireline Control Services, LLC; Canrig Drilling

Technology, Ltd.; Supreme Service & Specialty Co. Inc.; Gulf Offshore

---

[1] Pursuant to the Order entered at Docket 294, the Court granted leave for the Intervenors to file an amended complaint

Logistics, L.L.C.; Martin Holdings, L.L.C.; C-Port/Stone, L.L.C.;
Offshore Service Vessels, L.L.C.; Barry Graham Oil Service, L.L.C.;
Warrior Energy Services Corporation; Stabil Drill Specialties, L.L.C.;
Frank's Casing Crew and Rental Tools, Inc.; Offshore Energy Services,
Inc.; Champion Technologies, Inc.; The Bank of New York Mellon Trust
Company, N.A.; and United States Department of Interior.

## JURISDICTION AND VENUE

6.     The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.  The Complaint in Intervention arises under, arises in or is related to a case under Title 11.

7.     This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

8.     Pursuant to Federal Rule of Bankruptcy Procedure 7008(a) and Local Bankruptcy Rule 7008(a), the Intervenors do not consent to the entry of final orders or judgment by the Bankruptcy Judge if it is determined that the Bankruptcy Judge, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

9.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.     This Court has jurisdiction to grant the relief sought herein under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

## PROCEDURAL AND FACTUAL BACKGROUND

**A.     Bankruptcy of the Debtor**

11.     On August 17, 2012, (the "***Petition Date***"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the

"**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**").

B.    **Intervenors' Claims Against the Debtor and Liens and Privileges Against The Subject Interests**

12.    Prior to the Petition Date, each of the Intervenors provided labor, services, and/or materials to the Debtor for and in connection with the Debtor's operation of certain oil and gas properties located in the Gulf of Mexico.

13.    Specifically, the following table sets forth the date upon which each of the Intervenors began providing labor, equipment, services and supplies to the Debtor in support of the Debtor's development, exploration, maintenance and operations, including drilling, completion, testing and production of offshore oil and gas leases located on the Outer Continental Shelf:

| Entity Name | Lien Inception Date[2] | Relevant Property |
|---|---|---|
| Harvey Gulf | 05/31/09 | Lease No. OCS-G-16661, located on the Outer Continental Shelf at Mississippi Canyon Block 941 ("*MC 941*"); Lease No. OCS-G-24130, located on the Outer Continental Shelf at Mississippi Canyon Block 942 ("*MC 942*"); Lease No. OCS-G 13198, located on the Outer Continental Shelf at Atwater Valley Block 63 ("*AT 63*"). |
| Hornbeck | 11/27/09 | MC 941; MC 942; AT 63 and Lease No. OCS-G-22939, located on the Outer Continental Shelf at Green Canyon Block 300 ("*GC 300*") |

14.    The Intervenors are each granted a lien and privilege by operation of the

_____

[2] Defined below.

Louisiana Oil Well Lien Act, La. R.S. § 9:4861, *et seq*. ("*LOWLA*")[3] to secure payment for the labor, equipment, services and supplies provided by them to the Debtor for use in connection with the Debtor's development, exploration, maintenance and operations, including drilling, completion, testing and production, of oil and gas wells, including, but not limited to MC 941, MC 942, AT 63, and GC 300.

15.     Pursuant to La. R.S. § 9:4863(A), the Intervenors' liens and privileges (collectively, the "*Subject Privileges*") extend to the following described property (collectively, the "*Subject Interests*"):

> a.      the operating or leasehold interest of the operator of the relevant leases, MC 941, MC 942, AT 63, and GC 300 (the "*Subject Leases*") as it relates to this Adversary Proceeding, and the operating interest of any participating lessee(s) therein, together with such parties' interest in any (i) well(s), building, tank, leasehold pipeline, platforms, machinery, flowlines, gathering lines, and other related equipment and other construction or facility located thereon, (ii) all movables used in the operation of the well attached thereto or located on the Subject Leases and/or well site, including, but not limited to, monitoring, measuring, metering and control equipment, appurtenances, appliances, equipment and other structures, and (iii) tract of land, servitude or other lease described in La. R.S. § 9:4861(12)(c) covering the Subject Leases;

> b.      a drilling or other rig located at the Subject Leases, if the rig is

---

[3] With respect to all leases which are adjacent to Louisiana, including MC 941, MC 942, AT 63, and GC 300, LOWLA is applicable as surrogate federal law under Section 1332(a)(2)(A) of the OCSLA. *Cutting Underwater Tech. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 517-18 (5th Cir. 2012).

owned by the operator of the relevant lease, or the party with whom the Intervenors contracted;

c.      all hydrocarbons produced from the operating interest of the operator of the Subject Leases, and the operating interest of any participating lessee(s) therein; and

d.      the proceeds received by, and the obligations owed to, any lessee or operating interest in the Subject Leases from the disposition of hydrocarbons subject to the privilege.

16.      Pursuant to La. R.S. § 9:4862(B), each of the Intervenors is afforded a lien and privilege on the Subject Interests for the amount due for the labor, supplies, and services, in principal and interest, and for the cost of preparing and recording the privilege, or any notice of lis pendens and reasonable attorney's fees not to exceed ten percent (10%).

17.      In accordance with La. R.S. § 9:4865(A)(1), each of the Intervenors timely preserved the efficacy of their respective liens as to third parties by recording Oil Well Lien Affidavits in the relevant jurisdictions (collectively, the "***Intervenors' Lien Affidavits***").[4]

18.      Thereafter, and pursuant to La. R.S. § 9:4865(B) and Section 546 of the Bankruptcy Code, the Intervenors each timely perfected and maintained their respective liens and privileges as to the Subject Interests by filing their respective Notices of Perfection, Continuation or Maintenance of Liens and Supplemental and Amended

---

[4] Attached hereto and incorporated herein as Exhibit "A" is a list of all of the Intervenors' Lien Affidavits, including the place of filing, recordation information, the applicable property, and the principal amount of the relevant claim.

Notices of Perfection, Continuation or Maintenance of Liens.[5]

## C.     The OHA ORRI Relating to the Subject Interests

19.     On October 17, 2012, NGP instituted the above-captioned Adversary Proceeding by filing its *Complaint for Declaratory Judgment Against ATP Oil & Gas Corporation* (Adversary Docket No. 1).

20.     On June 20, 2011, NGP[6] and ATP executed a (i) Purchase and Sale Agreement  and ("***Original PSA***") and (ii) Conveyance of Term Overriding Royalty Interest ("***Original Conveyance***"), filed with the BOEMRE on June 24, 2011, and duly recorded in the Conveyance Records for Plaquemines Parish, Louisiana on June 23, 2011, COB 1249, Page 94, Entry No. 2011-00002622, whereby ATP conveyed to NGP (a) a term overriding royalty interest equal to 10.80% of eight-eighths of the value of all hydrocarbons produced, saved and sold from that certain outer continental shelf oil, gas, and mineral lease to submerged lands in Mississippi Canyon Block 755, known as OCS-G 14016 ("***MC 755***"), (b) a term overriding royalty interest equal to 8.1% of eight-eighths of the value of all hydrocarbons produced, saved and sold from that certain outer continental shelf oil, gas, and mineral lease to submerged lands in Mississippi Canyon Block 754 known as OCS-G 24104, ("***MC 754***"), and (c) a term overriding royalty interest equal to 10.80% of eight-eighths of the value of all hydrocarbons produced, saved and sold from that certain outer continental shelf oil, gas, and mineral lease to submerged lands in MC 711.  See NGP's Complaint (Adv. Doc. No. 1) at ¶ 9.

---

[5] *See* Docket Nos. 355, 596, 604, 700, 704, 705, 706, 709, 711, 712, 734 and 735 in Case No. 12-36187.

[6] At the time of the Conveyance, ATP entered into the various agreements with NGP Capital Resources Company; however, subsequent to the filing of this Adversary Proceeding, NGP became OHA.

21.     On December 29, 2011, NGP and ATP executed a (i) First Supplemental Purchase and Sale Agreement ("***First Supplemental PSA***"), and (ii) First Supplement and Amendment to Conveyance of Term Royalty Interest ("***First Supplemental Conveyance***"), filed with the BOEMRE on January 6, 2012, and duly recorded in Plaquemines Parish, Louisiana on January 6, 2012, COB 1261, Page 737, Entry No. 2012-00000100, whereby ATP conveyed additional term overriding royalty interests to NGP by increasing the Primary Sum used in the calculation of the termination of the term overriding royalty. See NGP's Complaint (Adv. Doc. No. 1) at ¶ 10.

22.     On July 2, 2012, NGP and ATP executed a (i) Second Supplemental Purchase and Sale Agreement ("***Second Supplemental PSA***"), and (ii) Second Supplement and Amendment to Conveyance of Term Overriding Royalty Interest ("***Second Supplemental Conveyance***"), filed with the BOEMRE on July 18, 2012, and duly recorded in Plaquemines Parish, Louisiana on July 23, 2012, COB 1273, Page 738, Entry No. 2012-00003278, whereby ATP conveyed additional term overriding royalty interests to NGP by increasing the Primary Sum used in the calculation of the termination of the term overriding royalty and also conveyed to NGP, (a) a term overriding royalty interest equal to 5.0% of eight-eighths of the value of all hydrocarbons produced, saved and sold from MC 942, (b) a term overriding royalty interest equal to 5.0% of eight-eighths of the value of all hydrocarbons produced, saved and sold from MC 941, and (c) a term overriding royalty interest equal to 5.0% of eight-eighths of the value of all hydrocarbons produced, saved and sold from AT 63.  (The Original Conveyance, First Supplemental Conveyance and Second Supplemental Conveyance are referred to collectively as the "***Conveyance***", and the term overriding

royalty interests granted under the Conveyance are referred to collectively as the "**ORRIs**").  See NGP's Complaint (Adv. Doc. No. 1) at ¶ 11.

23.    Prior to the Conveyance, OHA had constructive knowledge of the activities giving rise to the Intervenors' privileges though public filings that mentioned the mineral activities occurring on the Debtor's Telemark properties prior to the Conveyance, including, but not limited to filings with the Security and Exchange Commission ("**SEC**") and drilling permit applications filed with the Bureau of Ocean Energy Management ("**BOEM**").

24.    In ATP's 10-K for the year ending December 31, 2010, which was filed with the SEC on March 16, 2011 ("**2010 10-K**"), ATP reported that it had negotiated with vendors involved in the development of Telemark properties to partially defer payments over a twelve month period beginning with the first production.  As of December 31, 2010, ATP reported that it owed approximately $7 million in deferred Gulf of Mexico vendor debt.  See 2010 10-K attached as **Exhibit B** at page 50-51.  ATP also stated in the 2010 10-K that one of the goals for 2011 included drilling and completing two additional development wells at the Telemark Hub. See 2010 10-K at page 38.

25.    Further, based upon public records with BOEM, ATP filed for an application for a permit to drill the MC 941 #4 well on October 29, 2010 and the permit was approved on March 18, 2011.  ATP filed addition revised permit applications in 2011 on the MC 941 #4 well, which are on file in the BOEM public records. Additionally, on May 3, 2011, ATP filed with BOEM its Revised Application for Bypass requesting a permit for the MC 942 #2 Well, which was approved on August 15,

2011.  OHA had constructive knowledge that ATP was conducting drilling operations on MC 941 and MC 942 and that vendors were providing goods and services to the Subject Interests which would give rise to a mineral privilege under Louisiana law.

26.     In ATP's 10-K for the year ending December 31, 2011, which was filed in the SEC on March 15, 2012 ("**2011 10-K**"), ATP again reported that it had negotiated with vendors involved in the development of Telemark properties to partially defer payments over a twelve month period beginning with the first production.   As of December 31, 2011, ATP reported that it owed approximately $17.5 million in deferred Gulf of Mexico vendor debt.  See 2011 10-K attached as **Exhibit C** at pages 48-49.

27.     ATP also stated in the 2011 10-K that in 2011 and the beginning of 2012, it "continued drilling and completion activities on the third and fourth wells at [its] Telemark Hub" and that during 2012, ATP would "continue workover operations on two other wells at the Telemark Hub in an effort to continue to increase production . . ."  See 2011 10-K at pages 34-35.  OHA had constructive knowledge prior to the Conveyance that ATP was incurring vendor debt on the Subject Properties giving rise to the Subject Privileges under Louisiana law and that certain vendors providing goods and services on Subject Interests were not being paid timely.

28.     Upon information and belief, OHA had actual knowledge that vendors, including the Intervenors, were providing goods and services to the Subject Interests, giving rise to the Subject Privileges.  As part of its due diligence conducted prior to the Conveyance, OHA would have had actual knowledge that certain vendors, including the Intervenors, were preforming goods and services on the Subject Leases which would

give rise to a privilege, and also that certain vendors, including the Intervenors, had not been paid for goods and services provided to the Subject Interests.

29.     Prior to the Second Supplemental Conveyance, ATP assigned OHA ORRI's on other properties.  In June 2011, ATP assigned OHA a term overriding royalty interest in MC 755, MC 754, and MC 711, and on December 2011, ATP assigned an additional term overriding royalty interests in those same properties to OHA (collectively, the "***Prior ORRIs***").  The Intervenors anticipate that discovery will show that as part of the reporting that OHA received in connection with the Prior ORRIs and with the due diligence conducted by it related to the purchase of the Subject Interests, OHA had actual knowledge that the Intervenors were furnishing material and labor which were secured by a statutory privilege.

**D.     The Debtor's Emergency ORRI Motion**

30.     Prior to the filing of the instant Adversary Proceeding, the Debtor filed its *Emergency Motion for an Order Authorizing (1) Payment of Funds Attributable to Overriding Royalty Interests in the Ordinary Course of Business and (2) Payment of Funds Attributable to Net Profits Interests Subject to Further Order of the Court Requiring Disgorgement Thereof Pursuant to (A) Sections 105(a), 363(b) and 541(a) of the Bankruptcy Code and (B) the Procedures for Complex Chapter 11 Bankruptcy Cases for the United States Bankruptcy Court for the Southern District of Texas* (the "***ORRI Motion***") (Case No. 12-36187, Doc. No. 15).

31.     After numerous parties filed objections to the ORRI Motion, the Court conducted a contested hearing and entered its *Order* (the "***ORRI Order***") (Case No. 12-36187, Doc. No. 191) as to the ORRI Motion.

32.     The ORRI Order specifically provided that, subject to execution of a disgorgement agreement in the form attached thereto as <u>Annex A</u> by holders of overriding royalty interests and net profits interests ("***ORRI/NPI Holders***"), the Debtor was ordered to distribute payments under the relevant transaction documents to such parties.

33.     The ORRI Order further provided that any distribution to the ORRI/NPI Holders is conditioned upon and subject to "the right of any party in interest claiming to hold a mechanic's and materialman's or similar statutory lien or privilege on any property to which a Subject Interest relates, to assert in a proper proceeding that such party's lien or privilege (A) extends to any such funds distributed pursuant to this Order, (B) is senior and superior to the interests of any such Subject Interest holder, or (C) to seek disgorgement, turnover, or other relief in connection therewith..."   See ORRI Order, at p. 2-3.

## RELIEF REQUESTED

34.     As described above and in the Complaint, OHA seeks entry of a declaratory judgment that (a) the ORRI is property of OHA and not the Debtor, (b) the Conveyance and the ORRIs are not executory contracts or leases that the Debtor may reject under Section 365 of the Bankruptcy Code, and (c) the conveyance of the ORRIs to OHA constitutes an absolute, present, unequivocal conveyance of vested real property interests.

35.     The Intervenors' respective liens and privileges on the Subject Interests, which include the leasehold and operating interest relevant to the Subject Leases, were effective as to third parties, including OHA, when the Intervenors first began providing

services and materials and/or a lapse of more than ninety (90) days did not occur between

providing services and materials[7] to the Subject Leases (the "***Lien Inception Date***").

36.     The following table sets forth relevant Lien Inception Date for each of the

Intervenors with respect to the Subject Leases, all of which predate the recording of the

Original Conveyance, the First Supplemental Conveyance and the Second Supplemental

Conveyance:

| Entity Name | Lien Inception Date | Subject Lease(s) |
|---|---|---|
| | | |
| Harvey Gulf | 05/31/09 | MC 941, MC 942 and AT 63 |
| Hornbeck | 11/27/09 | MC 941, MC 942, AT 63 and GC 300 |

37.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, the

Intervenors hereby seek a declaratory judgment that: (A) the Intervenors have each

properly and timely perfected their liens and privileges as to the relevant Subject

Interests; (B) the Original Conveyance, the First Supplemental Conveyance and the

Second Supplemental Conveyance were recorded after the Lien Inception Date of each of

the Intervenors' liens and privileges; (C) the ORRIs were transferred to OHA subject to

the Intervenors' liens and privileges in the Subject Interests, including the Subject

Leases; and (D) solely with respect to ORRIs on the Subject Leases, and until the

Intervenors' liens and privileges are fully discharged (i) any payments made to OHA

must be disgorged and paid to the Intervenors in accordance with the ORRI Order [Dkt.

No. 191]; and (ii) any future payments designated to be or actually made to OHA shall

be paid and be turned over to the Intervenors.

38.     Pursuant to 28 U.S.C. § 2202, and the ORRI Order, the Intervenors seek

---

[7] See La. R.S. 9:4864(C).

turnover of all payments made by the Debtor to OHA until such time as the Intervenors' liens and privileges as to the Subject Interests are satisfied in full.

39.     Pursuant to 28 U.S.C. § 2202 and La. R. S. 9:4861, *et seq*., the Intervenors seek an award of costs and reasonable and necessary attorneys' fees incurred in these proceedings.

## **PRAYER**

WHEREFORE, Harvey Gulf International Marine, LLC, and Hornbeck Offshore Services, LLC respectfully request that the Court enter judgment in their favor, grant the declarations and relief requested herein, and for such other and further relief to which such Intervenors are justly entitled.


Dated:  May 27, 2016.

> Respectfully submitted,
>
> ADAMS AND REESE LLP
>
>
> /s/ *Robin B. Cheatham*
> Robin B. Cheatham (So. District No. 18036)
> Scott R. Cheatham Tex Bar No. 24050406
> One Shell Square
> 701 Poydras Street, Suite 4500
> New Orleans, Louisiana 70139-4500
> Telephone: (504) 581-3234
> Telecopier: (504) 566-0210
> Email: robin.cheatham@arlaw.com
> *Attorneys for Harvey Gulf International Marine, LLC and Hornbeck Offshore Services, LLC.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing document has been served upon the following parties listed below via electronic means by the Court's CM/ECF electronic filing system and/or by placing a copy in United States mail, first class, postage prepaid and properly addressed this 27th day of May, 2016:

- Jeffrey C Alexander    jalexander@doblaw.com, jschmutzer@doblaw.com
- Mitchell E Ayer    mitchell.ayer@tklaw.com, mattia.maldonado@tklaw.com;tj.crittendon@tklaw.com
- Charles A Beckham    beckhamc@haynesboone.com, kenneth.rusinko@haynesboone.com
- David Mark Bennett    david.bennett@tklaw.com, gracie.gonzales@tklaw.com;tj.crittendon@tklaw.com;Shannon.Savage@tklaw.com
- Rhett G Campbell    rhett.campbell@tklaw.com, Jeanie.Mathews@tklaw.com;tj.crittendon@tklaw.com
- Robin B Cheatham    robin.cheatham@arlaw.com, vicki.owens@arlaw.com
- Paul M Davis    pauldavis@andrewskurth.com
- Sean B Davis    sbdavis@winstead.com, jhebert@winstead.com
- Timothy Micah Dortch    micah.dortch@cooperscully.com, luisa.ulluela@cooperscully.com
- Andrew J. Gallo    andrew.gallo@morganlewis.com
- Kenneth P. Green    kgreen@snowspencelaw.com, janissherrill@snowspencelaw.com;rhondarackley@snowspencelaw.com
- Tye Hancock    tye.hancock@tklaw.com, patricia.flores@tklaw.com;tj.crittendon@tklaw.com
- Benjamin W Kadden    bkadden@lawla.com, jbriggett@lawla.com;speck@lawla.com;mnguyen@lawla.com
- Phillip L Lamberson    plamberson@winstead.com, pschneller@winstead.com;bdaniels@winstead.com
- Christopher David Lindstrom    chris.lindstrom@cooperscully.com, angela.rhodes@cooperscully.com
- Allen C. Miller    allen.miller@phelps.com, linda.jefferson@phelps.com
- Michael D Rubenstein    mdrubenstein@liskow.com
- Charles M. Rubio    crubio@diamondmccarthy.com, lsimon@diamondmccarthy.com;whotze@diamondmccarthy.com
- E Kathleen Shahan    kathie.shahan@usdoj.gov, pamela.huff@usdoj.gov
- John James Sparacino    jjsparacino@vorys.com, kbconiglio@vorys.com
- William Ross Spence    ross@snowspencelaw.com, donnasutton@snowspencelaw.com;janissherrill@snowspencelaw.com;brittanyDecoteau@snowspencelaw.com

- James Matthew Vaughn    mvaughn@porterhedges.com,
  ksteverson@porterhedges.com;jdickinson@porterhedges.com
- Brian D Wallace    wallaceb@phelps.com, renee.coulter@phelps.com
- Brian D Wallace    wallaceb@phelps.com, renee.coulter@phelps.com
- Victor Weitao Zhao    victor.w.zhao@usdoj.gov

ATP Oil & Gas Corporation            Rodney Tow
4600 Post Oak Place, Suite 100       Tow & Koenig, PLLC
Houston, TX 77027                    10077 Grogans Mill Road
                                     Suite 145
                                     The Woodlands, TX 77380


                                     */s/Robin B. Cheatham*_____
                                     Robin B. Cheatham